1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PAUL DEMERS, JR.,                           No.  2:13-cv-2096-KJN

12              Plaintiff,

13        v.                                      ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security

19   ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI")

20   under Title XVI of the Social Security Act ("Act").[1]  In his motion for summary judgment,

21   plaintiff principally contends that the Commissioner erred by finding that plaintiff was not

22   disabled from September 1, 2010, the date that plaintiff's SSI application was filed, through the

23   date of the ALJ's decision.  (ECF No. 19.)  The Commissioner filed an opposition to plaintiff's

24   motion and a cross-motion for summary judgment.  (ECF No. 20.)  No optional reply brief was

25   filed by plaintiff.

26   _____

27   [1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and
     both parties voluntarily consented to proceed before a United States Magistrate Judge for all
28   purposes.  (ECF Nos. 7, 21.)

                                              1

For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.      BACKGROUND

Plaintiff was born on November 17, 1988, has a high school diploma, is able to communicate in English, and has no past relevant work.[2]  (Administrative Transcript ("AT") 51, 67, 81.)  On September 1, 2010, at the age of 21, plaintiff applied for SSI, alleging that his disability began on November 17, 1992, and that he was disabled primarily due to attention deficit hyperactivity disorder ("ADHD") and bipolar disorder.  (AT 22, 67, 81, 132, 150.)[3]  On December 24, 2010, the Commissioner determined that plaintiff was not disabled.  (AT 22, 82-86.)  Upon plaintiff's request for reconsideration, that determination was affirmed on September 2, 2011.  (AT 22, 89-94.)  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on May 22, 2012, and at which plaintiff, represented by a non-attorney representative, and a vocational expert ("VE") testified.  (AT 22, 47-66.)

In a decision dated June 29, 2012, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from September 1, 2010, the date that plaintiff's SSI application was filed, through the date of the ALJ's decision.  (AT 22-29.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on August 21, 2013.  (AT 1-6.)  Thereafter, plaintiff filed this action in federal district court on October 10, 2013, to obtain judicial review of the Commissioner's final decision.

II.     ISSUES PRESENTED

Plaintiff has raised the following issues:  (1) whether the ALJ improperly rejected portions of the consultative psychologist's opinion; (2) whether the ALJ overstated the effect of plaintiff's

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's mental health history, the court does not exhaustively relate those facts in this order.  The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Regardless of the alleged disability onset date, SSI is not payable prior to the month following the month in which the application was filed.  20 C.F.R. § 416.335.

1  substance abuse on his psychiatric condition; and (3) whether the ALJ erroneously found that

2  plaintiff did not meet a Listing.[4]

3  III.    LEGAL STANDARD

4          The court reviews the Commissioner's decision to determine whether (1) it is based on

5  proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

6  as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

7  evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

8  F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

9  mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

10 Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

11 responsible for determining credibility, resolving conflicts in medical testimony, and resolving

12 ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The

13 court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational

14 interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

15 IV.    DISCUSSION

16         A.     Summary of the ALJ's Findings

17         The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard

18 five-step analytical framework.[5]  At the first step, the ALJ concluded that plaintiff had not

19
20 _____

[4] Plaintiff's briefing raised these issues in a somewhat different order.

21
[5] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social
Security program.  42 U.S.C. §§ 401 et seq.   Supplemental Security Income is paid to disabled
22 persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as
an "inability to engage in any substantial gainful activity" due to "a medically determinable
23 physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel
five-step sequential evaluation governs eligibility for benefits under both programs.  See 20
24 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-
42 (1987).  The following summarizes the sequential evaluation:
25

26         Step one: Is the claimant engaging in substantial gainful activity?  If so, the
           claimant is found not disabled.  If not, proceed to step two.
27
           Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step
28         three.  If not, then a finding of not disabled is appropriate.

3

1   engaged in substantial gainful activity since September 1, 2010, the date that plaintiff's SSI

2   application was filed.  (AT 24.)  At step two, the ALJ determined that plaintiff had the following

3   severe impairments: bipolar disorder not otherwise specified; poly-substance abuse disorder;

4   mood disorder; and borderline intellectual functioning.  (Id.)  However, at step three, the ALJ

5   determined that plaintiff did not have an impairment or combination of impairments that met or

6   medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P,

7   Appendix 1.  (Id.)

8        Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity

9   ("RFC") as follows:

10   > After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
11   > perform a full range of work at all exertional levels but with the
> following non-exertional limitations: he is able to understand,
12   > remember and/or carry out simple instructions; make judgments on
> simple, work-related instructions; interact appropriately with
13   > supervisors and co-workers and only incidental contact with the
> public; he is also able to respond appropriately to usual work
14   > situations and changes in a routine work setting.

15   (AT 25.)

16        At step four, the ALJ found that plaintiff had no past relevant work.  (AT 28.)  Finally, at

17   step five, the ALJ determined, based on the VE's testimony, that, considering plaintiff's age,

18   education, work experience, and RFC, there were jobs that existed in significant numbers in the

19

20   Step three: Does the claimant's impairment or combination of impairments meet or
     equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the
21   claimant is automatically determined disabled.  If not, proceed to step four.

22   Step four:  Is the claimant capable of performing his past relevant work?  If so, the
23   claimant is not disabled.  If not, proceed to step five.

24   Step five:  Does the claimant have the residual functional capacity to perform any
     other work?  If so, the claimant is not disabled. If not, the claimant is disabled.
25

26   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

27        The claimant bears the burden of proof in the first four steps of the sequential evaluation
     process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
28   evaluation process proceeds to step five.  Id.

4

1   national economy that plaintiff could perform.  (Id.)

2       Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined

3   in the Act, from September 1, 2010, the date that plaintiff's SSI application was filed, through the

4   date of the ALJ's decision.  (AT 29.)

5       B.   Plaintiff's Substantive Challenges to the Commissioner's Determinations

6       1.  Whether the ALJ improperly rejected portions of the consultative psychologist's

7   opinion

8       On June 15, 2011, plaintiff was evaluated by consultative psychologist, Dr. Troy Ewing,

9   who reviewed plaintiff's records, performed a mental status examination, and conducted

10  psychological testing.  (AT 399-404.)  Dr. Ewing diagnosed plaintiff with mood disorder not

11  otherwise specified, cocaine abuse in reported remission, cannabis abuse in reported remission,

12  rule out reading disorder not otherwise specified, and rule out borderline intellectual functioning,

13  with a GAF of 60.[6]  (AT 403.)  Dr. Ewing offered the following opinion concerning plaintiff's

14  work-related abilities:

15          The claimant had no difficulty understanding, remembering, and
            carrying out simple instructions.  Claimant had mild difficulty with
16          detailed and complex instructions.  Claimant had moderate
            difficulty maintaining attention and concentration for the duration
17          of the evaluation.  Claimant's pace was mildly decreased.  Claimant
            demonstrated mild difficulty with pace and persistence.  The
18          claimant had mild difficulty enduring the stress of the interview.
            Claimant is likely to have moderate difficulty adapting to changes
19          in routine work-related settings.  Based upon observations of
            current behavior and reported psychiatric history, the claimant's
20          ability to interact with the public, supervisors, and coworkers there
            appears to be mild impairment. [sic]
21

22  (AT 404.)

23      Plaintiff contends that the ALJ improperly rejected Dr. Ewing's assessed moderate

24  limitations in plaintiff's ability to maintain attention/concentration and adapt to changes in routine

25

26  [6]  GAF is a scale reflecting "psychological, social, and occupational functioning on a hypothetical
    continuum of mental health-illness."  Diagnostic and Statistical Manual of Mental Disorders 34
27  (4th ed. 2000).  A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and
    circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or
28  school functioning (e.g., few friends, conflicts with peers or co-workers)."  Id.

1  work-related settings, because such limitations were not expressly listed in the ALJ's RFC or

2  hypothetical to the VE.  That argument is unpersuasive.

3       The Ninth Circuit has observed that an ALJ may properly synthesize and translate

4  assessed limitations into an RFC assessment without repeating each functional limitation

5  verbatim in the RFC assessment.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir.

6  2008); see also 20 C.F.R. § 404.1545 (defining RFC as "the most you can still do despite your

7  limitations").  In this case, plaintiff's assessed RFC adequately captures the moderate functional

8  limitations assessed by Dr. Ewing.  For example, plaintiff's moderate limitations with respect to

9  attention and concentration are rationally accounted for by the restriction to simple tasks, which

10  by their nature require less attention and concentration than complex tasks.  Furthermore, it is

11  reasonable to conclude that a position involving simple tasks would involve more predictability

12  and a reduced amount of change in the work setting, thereby addressing plaintiff's moderate

13  limitations with respect to changes in the work environment.  See Stubbs-Danielson, 539 F.3d at

14  1174 (holding that an ALJ's assessment of a claimant adequately captures restrictions related to

15  concentration, persistence, or pace where the assessment is consistent with restrictions identified

16  in the medical testimony).  Notably, the ALJ's translation of Dr. Ewing's opinion is also

17  consistent with the opinion of the state agency psychiatrist, Dr. Loomis, who reviewed plaintiff's

18  records and opined that plaintiff was able "to maintain concentration, persistence and pace

19  throughout a normal workday/workweek as related to simple tasks" and could "make adjustments

20  and avoid hazards in the workspace."  (AT 370.)

21       Thus, the ALJ did not reject the moderate mental limitations assessed by Dr. Ewing, but

22  instead translated, synthesized, and incorporated them into the RFC.  Moreover, any technical

23  error regarding incorporation of such moderate mental limitations into the RFC was harmless,

24  because the Ninth Circuit has held that moderate mental limitations do not even require

25  vocational expert testimony.  See Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007).  In

26  Hoopai, a medical source determined that the claimant was moderately limited in "his ability to

27  maintain attention and concentration for extended periods; his ability to perform activities within

28  a schedule, maintain regular attendance, and be punctual with customary tolerance; and his ability

1    to complete a normal workday and workweek without interruption from psychologically-based

2    symptoms and to perform at a consistent pace without an unreasonable number and length of rest

3    periods."  Id.  After the ALJ, at step five, utilized the Grids (which take administrative notice of

4    the number of unskilled jobs at different exertional levels) to determine that the claimant was not

5    disabled, plaintiff contended on appeal that the ALJ was instead required to seek vocational

6    expert testimony regarding the limitations assessed.  Id. at 1075.  The Ninth Circuit rejected this

7    argument, holding that these moderate limitations were not sufficiently severe to prohibit the ALJ

8    from relying on the Grids without the assistance of a vocational expert.  Id. at 1077.

9          For these reasons, the court finds no error in the ALJ's treatment of Dr. Ewing's opinion.

10         2.  Whether the ALJ overstated the effect of plaintiff's substance abuse on his psychiatric

11   condition

12         The record in this case indicates that plaintiff has a history of substance abuse involving,

13   inter alia, crystal methamphetamine, cocaine, ecstasy, and cannabis.  (See,e.g., AT 279, 297, 401,

14   420.)  During the consultative evaluation with Dr. Ewing, plaintiff denied current drug use, but

15   Dr. Ewing stated that plaintiff "may not have been as forth right with drug use as he was

16   protective when discussing drug use."  (AT 401.)  Dr. Ewing further stated: "[Plaintiff] denied

17   substance abuse but almost appeared to be under the influence of something and staggered when

18   he walked."  (AT 402.)  In discussing plaintiff's psychological/behavioral functioning, Dr. Ewing

19   again noted that it was "unclear if [plaintiff] was under the influence of a controlled substance or

20   if a psychiatric process was contributing to his overall presentation."  (AT 403.)  Nevertheless,

21   Dr. Ewing ultimately issued a functional capacity assessment that accounted for plaintiff's

22   general condition and presentation, regardless of the cause(s) of the functional limitations.  (AT

23   404.)

24         The Act provides that "an individual shall not be considered to be disabled…if alcoholism

25   or drug addiction would…be a contributing factor material to the Commissioner's determination

26   that the individual is disabled."  42 U.S.C. § 1382c(a)(3)(J).  Plaintiff contends that the ALJ

27   overstated the effect of plaintiff's substance abuse on his psychiatric condition by improperly

28   weighing and interpreting various types of record evidence.  However, the effect of plaintiff's

7

1    substance abuse here is essentially a red herring, because substantial evidence shows that plaintiff

2    was not disabled during the relevant period, regardless of the potential impact of substance abuse.

3    Specifically, *whether arguably attributable to substance abuse or to independent mental*

4    *impairments*, the functional limitations outlined in the opinions of consultative psychologist Dr.

5    Ewing and state agency psychiatrist Dr. Loomis, on which the ALJ relied in formulating

6    plaintiff's RFC, do not support a finding of disability under the Act, because the VE testified that

7    plaintiff could nonetheless perform other work in the national economy.[7]

8              3.  Whether the ALJ erroneously found that plaintiff did not meet a Listing

9          Finally, plaintiff appears to contend that the ALJ erred in finding that plaintiff did not

10   meet or equal a Listing at step three.  The claimant "bears the burden of proving that ... she has an

11   impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the

12   Commissioner's regulations."  Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).  Here,

13   plaintiff failed to articulate a plausible theory of how the specific criteria of any Listing is met or

14   equaled.  To the contrary, substantial evidence supports the ALJ's finding that plaintiff only

15   suffers from mild to moderate mental limitations, insufficient to satisfy the criteria of a potentially

16   applicable Listing.  (AT 24-25.)[8]

17   ////

18   ////

19

20   [7] In one portion of the decision, and in contradiction to the rest of her analysis, the ALJ
21   confusingly suggested, in conclusory fashion, that plaintiff's chronic drug usage was material to a
     finding of disability, resulting in plaintiff having certain marked limitations and even meeting a
22   Listing.  (AT 28.)  However, that cursory suggestion is unsupported by any meaningful rationale
     and is plainly inconsistent with the opinions of Drs. Ewing and Loomis, on which the ALJ
23   substantially relied.  In any event, the issue has no impact on the result in this case.  If the ALJ's
     materiality finding were correct, plaintiff would be disqualified from benefits by statute.  On the
24   other hand, if the ALJ's materiality finding were erroneous, it would be harmless error, because,
     for the reasons discussed above, substantial evidence shows that plaintiff was not disabled during
25   the relevant period, regardless of the potential impact of substance abuse.

26   [8] Based on plaintiff's past psychiatric hospitalizations as a child and teenager, it may well be that
27   plaintiff met the childhood standard for disability for some period in the past.  However,
     substantial evidence supports the ALJ's ultimate finding that plaintiff did not meet the adult
28   standard for disability during the relevant period at issue in this appeal.

V.    CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 19) is DENIED.

2.  The Commissioner's cross-motion for summary judgment (ECF No. 20) is GRANTED.

3.  Judgment is entered for the Commissioner.

4.  The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated:  January 21, 2015

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE